# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| DYLAN CHASE MOBLEY and | ) | |
| ELIJAH THOMAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 5:19-cv-116 |
| | ) | |
| UNITED STATES GOVERNMENT, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This tax case is before the Court on the parties' cross-
motions for summary judgment. <u>See</u> Dkt. Nos. 79, 82. For the reasons
discussed below, the Government's motion, dkt. no. 82, is **GRANTED**
and Plaintiffs' motion, dkt. no. 79, is **DENIED**.

### BACKGROUND

Plaintiffs Dylan Chase Mobley and Elijah Thomas believe that
they are not subject to federal income tax. In their view, income
tax is voluntary for them because they "are not engaged in any
state or federal regulated activity" and "are not employees,
officers, or elected officials of the United States." Dkt. No. 29
(Amended Complaint) at 4. The controversy here comes from
Plaintiffs' tax filings with the IRS. For both Plaintiffs, the

undisputed facts follow the same general outline.[1]

Each filed an income tax return (which the IRS calls "Form 1040") for 2014, claiming he had overpaid federal income taxes. Dkt. No. 81 ¶ 3 (Mobley); Id. ¶ 8 (Thomas); see also id. ¶¶ 4, 9 (both men later filed an amended income tax return, called a 1040X).[2] The IRS disallowed their claims for a refund, id. ¶¶ 4, 9, and the Treasury Department assessed penalties for filing frivolous returns, id. ¶¶ 5, 10. See 26 U.S.C. § 6702; IRS, "The

---

[1] Plaintiffs' summary judgment papers respond to much of the United States' statement of material facts by stating that they "admit" some, "deny" others, and "lack[ ] knowledge" to respond to the rest. See generally Dkt. No. 84 at 4-5. It is sometimes permissible to respond that way to allegations in a complaint, see Fed. R. Civ. P. 8(b)(5), but not to a statement of material facts. The Federal Rules of Civil Procedure make clear that "[a] party asserting that a fact . . . is genuinely disputed must support [that] assertion by: (A) citing to particular parts of material in the record . . . , or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). So too, the Southern District's Local Rules emphasize that "[a]ll material facts set forth in the statement . . . will be deemed to be admitted unless controverted by a statement served by the opposing party." LR. 56.1; cf. Fed. R. Civ. P 56(e). Put differently, a plaintiff who "lacks information" to dispute a fact at summary judgment essentially concedes that the statement is, in fact, undisputed. Since Plaintiffs have offered no substantive, record-based responses to the Government's statement of material facts, they are deemed admitted. Wilson v. Suntrust Bank, Inc., No. 2:20-CV-20, 2021 WL 2525585, at *1 n.4 (S.D. Ga. Apr. 9, 2021) ("For all . . . responses in which Plaintiff simply states 'Denied' without citation to the record, the Court deems the corresponding statement of fact as admitted.").

[2] Because Plaintiffs' response effectively admits the Government's statement of material facts, supra note 1, and does not quote or reproduce them, this Order cites to the document itself, dkt. no. 81, not Plaintiffs' response, dkt. no. 84.

Truth About Frivolous Arguments (March 2018), available at
https://www.irs.gov/privacy-disclosure/the-truth-about-frivolous
-tax-arguments-section-i-a-to-c;[3] see also Dkt. Nos. 81-7, 81-8,
81-9 (reflecting the assessment of a penalty and "notice[s] issued"
to Thomas) and Dkt. No. 81-6, 81-4 (reflecting the assessment of
a penalty and "notice issued" to Mobley).

Mobley, for his part, filed a 2015 return reporting
(apparently) appropriate tax liability, dkt. no. 81 ¶ 6, but Thomas
filed an amended return for 2015 seeking a frivolous refund and
was assessed another penalty, id. ¶¶ 13-14. Not to be deterred,
Thomas sent the IRS a letter arguing that it must provide
documentation showing that he had voluntarily consented to pay
federal income tax. Id. ¶ 17; see also Dkt. No. 81-12 (demand for
2015 tax liability and Thomas's response). So the IRS assessed him
yet another penalty. Id. ¶ 18; Dkt. No. 81-13 (demand for 2016 tax
liability and Thomas's response).

When Plaintiffs failed to pay, the IRS filed liens against
them for their unpaid liabilities and penalties. Id. ¶¶ 19-20.
That led to this lawsuit.

The relevant procedural history is as follows. This
litigation started as a request for a writ of mandamus. Dkt. No. 1.

---

[3] FAS Capital, LLC v. Carr, 7 F. Supp. 3d 1259, 1266-67 (N.D. Ga.
Mar. 20, 2014) (courts may take judicial notice of documents
appearing on an official government website).

After this Court granted the Government's motion to dismiss the original complaint, dkt. nos. 9, 18, Plaintiffs sought and obtained leave to amend. Dkt. No. 19. The amended complaint scatters some six claims, generally complaining that the Government has denied Plaintiffs' right to challenge their tax status, dkt. no. 29 ¶ 16, and various procedural irregularities, id. ¶¶ 22, 26, 35-36, 47, 49-55, 58-62. The Government moved to dismiss again. Dkt. No. 34. This Court granted the motion except as to Plaintiffs' claim that the tax liens levied against them were legally unenforceable because there was "[an] invalid assessment or no notice of Deficiency." Dkt. No. 48 at 13 (quoting Dkt. No. 29 at 8). "The failure to first issue a notice of deficiency or a notice of demand for payment would render a subsequent lien invalid," the Court reasoned, and so "[b]ecause Plaintiffs allege that they never received a notice of deficiency [or a demand for payment,]" Plaintiffs had adequately alleged that the lien was unlawful and therefore "that the IRS was negligent in failing to release the lien[.]" Id. at 16.

After the benefit of discovery, both parties moved for summary judgment. Dkt. Nos. 79, 82.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007). A dispute is "genuine," and thus precludes summary judgment, where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta,

2 F.3d 1112, 1116 (11th Cir. 1993) (quoting <u>Celotex Corp.</u>, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

Following the Court's ruling on the Government's motion to dismiss the amended complaint, dkt. no. 48, the remaining issues in this case are (1) whether the IRS improperly failed to release tax liens against the Plaintiffs, and (2) whether the IRS engaged in improper collection methods. On both issues, Plaintiffs insist the liens against them are invalid because they never received a deficiency notice, dkt. nos. 79, 84, and the Government ripostes that because the liabilities here are "self-reported," deficiency procedures are unnecessary, dkt. no. 82 at 1–2. So the cross motions really come down to one issue: what, exactly, must the Government do to secure a valid lien on a taxpayer's property when he fails to pay?

Answering that question requires some technical background.

Start at thirty-thousand feet: once a taxpayer has filed his income tax return, there are two ways (in broad-strokes) that he might end up owing more ("outstanding liability" is the technical term).

1. First, his tax return might show that he owes more in income-tax than he has paid to-date. 26 U.S.C. § 6201(a)(1). The Government apparently refers to this as "self-reported" liability.[4] See, e.g., Dkt. No. 82 at 5-6. If that happens, then the Secretary of the Treasury assesses the tax and demands payment. See 26 U.S.C. § 6201(a)(1) ("[t]he Secretary shall assess all taxes" which are "shown on [the taxpayer's] return"); id. § 6203 ("[t]he assessment shall be made by recording the liability of the taxpayer in the office of the Secretary").

2. Second, the IRS might investigate the taxpayer's income status (sometimes called an "examination") *beyond* the return itself and decide that the taxpayer owes more. This is called a tax "deficiency"; it is calculated by subtracting whatever the taxpayer has already paid from the amount the Treasury

---

[4] The Government's summary judgment brief does not directly explain why assessing tax liability against a taxpayer who frivolously claimed that they "overpaid" the entirety of their income tax liability (and were thus entitled to a refund of the whole amount) is a "self-reported" liability covered by § 6201(a)(1) rather than a "deficiency" covered by § 6211. The answer, in any event, appears to be that the taxes being assessed here are the same ones "shown on the return," not some amount that "exceeds" that number. Compare 26 U.S.C. § 6201(a)(1) with id. § 6211(a).

determines he actually owes. 26 U.S.C. § 6211(a)(1)(A). Special procedures (called, unsurprisingly, "deficiency procedures") apply to assessing a deficiency. See 26 U.S.C. § 6211(a).

In both cases the Secretary must "give notice" to the taxpayer, "stating the amount [owed] and demanding payment[.]" 26 U.S.C. § 6303. If, *after receiving the demand for payment*, the taxpayer neglects or refuses to pay, the amount due becomes a lien on their property. 26 U.S.C. § 6321; cf. Bassett v. United States, 782 F. Supp. 113, 115 (M.D. Ga. 1992); see also 35 Am. Jur. 2d Federal Tax Enforcement § 232 (Nov. 2021 Update).

Thus, as discussed in the Court's ruling on the motion to dismiss, "[t]he failure to issue a notice of deficiency or a notice of demand for payment [as the case may be] would render a subsequent lien invalid." Dkt. No. 48 at 16 (discussing 26 U.S.C. § 6325(a)(1)); see also In Re Bertelt, 206 B.R. 587, 593 (Bankr. M.D. Fla. 1996) (explaining, in a case dealing with deficiency procedures, that the failure to issue a proper demand affects the enforceability of an administrative lien).

But while Plaintiffs' amended complaint survived the motion to dismiss because Plaintiffs *alleged* that the IRS did not issue a proper demand before imposing the lien, the Government is entitled to summary judgment because the undisputed evidence shows

that it did. See Dkt. Nos. 81-12, 13 (demands for Thomas's 2015 and 2016 tax liability and Thomas's responses); Dkt. Nos. 81-7, 81-8, 81-9 (reflecting the assessment of a penalty and "notice[s] issued" to Thomas); Dkt. No. 81-6, 81-4 (reflecting the assessment of a penalty and "notice issued" to Mobley).[5] The evidence, in short, does not support Plaintiffs' allegation. Since there is no evidence to question whether the IRS in fact sent demand letters notifying Plaintiffs that it had assessed more taxes and penalties, the legal conclusion must be that Plaintiffs' failure to pay triggered a lien on their property. See Bassett, 782 F. Supp. at 115 ("upon assessment, a lien on all of plaintiff's property arose in favor of the United States for the amount of the deficiency assessment" (citing 26 U.S.C. § 6321)).

Plaintiffs' insistence that they were nonetheless entitled to a deficiency notice misunderstands the relationship between that document and a demand letter. To play things out:

- If the IRS finds a deficiency, it must send a § 6212 Notice

---

[5] The Government's briefing is less than clear on this point, and the record evidence itself largely consists of *references* to demand letters (as opposed to the demands themselves), but the way this case has been litigated prevents a fact issue on this point. "Certificates of Assessments and Payments" like the ones the Government provided here "establish prima facie evidence that the IRS *did* issue a proper notice and demand letter." Bassett, 782 F. Supp. at 116 (citing United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1989)). Plaintiffs offer nothing to rebut that presumption, see id., they merely complain that they did not receive deficiency notices.

of Deficiency to the taxpayer to give the taxpayer a chance to challenge the deficiency, <u>Tavano v. C.I.R.</u>, 986 F.2d 1389, 1390 (11th Cir. 1993);

- After any such challenge is resolved (or the time to challenge the deficiency has run), <u>see</u> <u>id.</u> (referencing 26 U.S.C. § 6213(a)), the agency must validly assess the tax, 26 U.S.C. § 6203;

- Then, having assessed the tax, the IRS must "provide a 'Notice and Demand for payment' of the assessed tax as required by § 6303(a)," <u>Brewer v. United States</u>, 764 F. Supp. 309, 315 (S.D.N.Y. 1991);

- Then, and only then, "may the IRS take a lien on the delinquent taxpayer's property," <u>id.</u>[6]

<u>Cf.</u> <u>United States v. O'Callaghan</u>, 500 Fed. App'x. 843, 847 (11th Cir. 2012). This case, by contrast, involves only self-reported liabilities and penalties. Dkt. No. 81 ¶¶ 3-6, 8-10, 13-16 (discussing liabilities and penalties based on Plaintiffs' tax returns); Dkt. No. 81 ¶ 17 (discussing Thomas' frivolous response

---

[6] The <u>Brewer</u> Court suggested that the assessment comes *before* the Notice of Deficiency, but § 6213(a) makes clear that "no assessment of a deficiency . . . shall be made . . . until [either (1)] the expiration of [the time to file a petition with the tax court to challenge the deficiency]," or "[(2)] the decision of the Tax Court [on a pending petition to challenge the deficiency] has become final." Outside of that, <u>Brewer</u>'s analysis comports with <u>Tavano</u> and is instructive here.

to the IRS's demand for payment). Section 6201 plainly does not require deficiency procedures to assess taxes shown from a tax return: it simply directs the Secretary to assess that amount. Compare 26 U.S.C. § 6201(a)(1) (providing for "[t]axes shown on [a] return: The Secretary shall assess all taxes determined by the taxpayer or by the Secretary" from the face of the return "as to which returns or lists . . . are made under this title") with id. § 6212(a) (calling for a notice to the taxpayer in order to assess a deficiency). And the penalty statute is clear: "[d]eficiency procedures do not apply . . . to the assessment or collection of penalties provided by section[ ] . . . 6702." 26 U.S.C. § 6703(b). So it follows: cases like this one do not require a deficiency notice in order to impose a lien. See Our Country Home Enters., Inc. v. Comm'r of Internal Revenue, 855 F.3d 773, 778-79 (7th Cir. 2017) ("Some taxes are not considered deficiencies under the Internal Revenue Code . . . . For these nondeficiency taxes—which are not subject to deficiency procedures . . . [—]the IRS can make an immediate assessment" and then "notify the taxpayer of the amount due and demand payment" under § 6303(a)).

To be sure, the Secretary must still demand payment before imposing a lien, 26 U.S.C. § 6321, but that is not the same thing as a deficiency notice. Compare id. § 6303(describing a notice and demand for payment of assessed taxes) with id. § 6212 (describing

a deficiency notice). When the tax liability comes from self-reported sources like an income tax return or frivolous submissions, it is *assessed* under § 6203, the taxpayer is *notified* under § 6303, and (if he does not pay) the lien is *levied* under § 6321.[7] See Vence v. C.I.R., 297 Fed. App'x. 827, 828 (11th Cir. 2008) (explaining the process of assessing and demanding tax liability in non-deficiency cases before imposing a lien); cf. United States v. Hopkins, 509 Fed. App'x. 765, 771 n.4 (10th Cir. 2013) and Our Country Home, 855 F.3d at 779.

The cases to which Plaintiffs cite do not show otherwise. Dkt. No. 84 at 8-9. Plaintiffs cite Brewer v. United States, for example, for the proposition that the IRS was required to send "a section 6212 'Notice of Deficiency'" before instituting a lien. Dkt. No. 84 at 9 (quoting 764 F. Supp. at 315). But Brewer was a

---

[7] Understandably, Plaintiffs' summary judgment papers reflect some confusion about the meaning of the term "assessed." See Dkt. No. 84 at 8. They contend, it seems, that because the Secretary of the Treasury "made an assessment against the Plaintiffs" that "the Government's claims that plaintiffs assessments were self reporting are invalid[ ] and the IRS . . . had a statutory duty to file a 'Notice of Deficiency' upon plaintiffs[.]" Id. That is not correct. In context, the term "assess" refers to the formal imposition of a tax. See 26 U.S.C. § 6201. It does not, as Plaintiffs seem to believe, mean that the taxes imposed are not "self-reported" and therefore subject to deficiency proceedings. Again: "self-reported" (as the agency uses it) simply means that the liability is shown by the taxpayer's submissions to the IRS, see id. § 6202(a)(1) (dealing with "[t]axes shown on return"), as opposed to some investigation of other facts or documents by the Government, see id. 6211.

deficiency case; the plaintiff in that case failed to file any tax returns at all. 764 F. Supp. at 311; see Laing v. United States, 423 U.S. 161, 174 (1976) ("Where there has been no tax return filed, the deficiency is the amount of the tax due"); see also In re Bertelt, 206 B.R. at 593 (deficiency case); United States v. Navolio, 334 F. App'x. 204, 208 (11th Cir. 2009) (same). To reiterate: the lien statute itself does not require deficiency proceedings, 26 U.S.C. § 6321; those are required only for deficiency *assessments*, see id. § 6212. Since the taxes owed here come from Plaintiffs' tax returns and penalties, deficiency proceedings are not required.

Thus, Plaintiffs' argument that the liens here are invalid without deficiency notices is misplaced. The IRS need only have sent an unmet demand for payment before instituting the liens here. It did that, and so the lien is enforceable, and the IRS was not required to release it.[8]

---

[8] Since Plaintiffs' second argument similarly rests on the assertion that the IRS failed to issue a notice of deficiency, dkt. no. 84 at 8-9, the Court's conclusion here also disposes of Plaintiffs' argument that the IRS engaged in improper collection activity. To the extent Plaintiffs mean to re-urge their complaints that (1) the assessment was not signed and dated and (2) the Government denied their right to an appeal, see id. at 9, those claims have already been dismissed, dkt. no. 48.

**CONCLUSION**

The Government's motion for summary judgment, dkt. no. 82, is therefore **GRANTED**, and Plaintiffs' motion, dkt. no. 79, is **DENIED**. The Clerk is **DIRECTED** to **CLOSE** this case.

**SO ORDERED** this 9th day of December, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA